U. S. DISTRICT COURT
Eastern District of Louisiana

FILED   APR - 9 2007

LORETTA G. WHYTE
Clerk

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

**KENNON BRADFORD,**
      Petitioner/Defendant,

L (3)

v.                                  CASE NO.: 2:00-CR-198-EEF-ALL

UNITED STATES OF AMERICA,
      Respondent/Plaintiff.
_____/

**MOTION TO ALTER AND/OR AMEND JUDGMENT
PURSUANT TO RULE 60(b)(6) OF THE FED.R.CIV.P.**

COMES NOW, Petitioner Kennon Bradford, *pro-se* with this Motion to Alter and/or Amend Judgment Pursuant to Rule 60(b)(6) of the Fed.R.Civ.P. and provides as follows:

**I. SUMMARY OF THE PROCEDURAL HISTORY**

The Grand Jury indicted Kennon Bradford with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) Case No.: 2:00-CR-00198-EEF-ALL. The case was tried to a jury, which found Mr. Bradford guilty. The District Court sentenced Mr. Bradford to 87 months of incarceration, the top of the applicable Sentencing Guideline range and three years of supervised release. Judgment was entered on October 16, 2001.

TENDERED FOR FILING

APR - 9 2007

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

___Fee_____
___Process___
_X_Dktd_____
_X_CtRmDep__
Doc. No.____

Mr. Bradford timely filed a notice on October 22, 2001, and on November 25, 2002 the United States Court of Appeals for the Fifth Circuit affirmed Mr. Bradford's conviction and sentence on.

A petition for a Writ of Certiorari was timely filed in the United States Supreme Court and on May 28, 2003 the Supreme Court denied Mr. Bradford's petition.

On May 24, 2004, Mr. Bradford timely filed a Motion to Vacate, Set Aside, or Correct a Sentence pursuant to Title 28 U.S.C. § 2255, alleging ineffective assistance of counsel in the trial and appellate phases. *See, United States v. Bradford,* Docket No. 2:04-CV-1482. The District Court denied the requested relief, but issued a Certificate of Appealability pursuant to Title 28 U.S.C. § 2253 on whether counsel was ineffective in his failure to file a motion to suppress and due to the warrant less search of the rental vehicle.

After briefing the merits of the issues, the Fifth Circuit Court of Appeals affirmed the District Court's denial of the § 2255. See, *United States v. Bradford,* Docket No: 05-30070.

Mr. Bradford timely filed a Petition for a Writ of Certiorari in the United States Supreme Court. The Petition was denied on October 30, 2006. *United States v. Bradford,* Docket No. 06-6617.

Petitioner provides that in light of the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005) that reconsideration of the Court's original

judgment is required in the instant matter in order to allow the Court to reconsider the sentence it would have imposed in a non-guideline fashion as required per the Supreme Court's decision in *Booker*.

## STATEMENT OF THE FACTS

On March 3, 2000, Kennon Bradford, also known as "Greedy Man," escaped from a federal prison camp in Pensacola, Florida and was sought by authorities as a fugitive from justice. Sometime between March 3, 2000 and March 20, 2000 supposedly Bradford traveled to New Orleans and contacted his former live-in girlfriend, Karen Barnes. On March 20, 2000 Barnes rented a silver Altima in her name on a weekly contract.

On April 4, 2000 Barness paid cash for a hotel room in her name at the Econo Lodge in Slidell, Louisiana, while Bradford waited outside in the Altima. The two spent the night there along with Barnes small child.

Acting on information regarding Bradford's whereabouts, a team of deputies from the United States Marshals Service and Agents of the Bureau of Alcohol, Tobacco and Firearms located the silver Altima at the Econo Lodge the following day. Hotel management specifically identified Bradford and Barnes as the occupants of Room 230 and provided a pass key for entry.

Using the pass key, the team attempted to open the door but found it barred or chained from the inside. A female later identified as Barnes unlocked the door and

3

admitted the team who found Bradford and Barnes in the room with the small child. The team secured the area, arrested Bradford and questioned Barnes, who voluntarily consented to questioning and voluntarily signed a form permitting search of the Altima that she rented.

The Altima was parked about 30 feet from Room 230. Searching the car, a deputy Marshal observed that the driver's seat was pushed all the way back, which he thought was significant because Bradford is tall, but Barnes is not. The deputy believed this suggested that Bradford, not Barnes, most recently had driven the car. Under the driver's seat was a fully loaded Cobray Mack M-11 .9-millimeter semiautomatic pistol.

At the scene, Barnes claimed she knew nothing about the gun but twice told authorities that she had rented the Altima for Bradford. Barnes confirmed that Bradford had driven the car most recently. She said that only she and Bradford had access to the car from April 3, 2000 through April 5, 2000.

In her June 8, 2000 grand jury testimony, Barnes again said that only she and Bradford had access to the Altima but told the grand jury that at some point prior to Bradford's arrest, she had noticed "a big gun" under the seat of the car. She said it was not her gun and that only Bradford could have put it there. Barnes said she confronted Bradford about the gun out of concern for her children and he said he would get rid of it.

More than a year later, on the Friday before Bradford's trial, Barnes recanted her sworn grand jury testimony and her statement at the crime scene to claim that an individual named Kelvin Fox also had access to the car.

At trial, the jury heard all three versions of Barnes' story – her crime scene statement, her grand jury testimony about two months later and her new story which surfaced more than a year after that. Finally the jury convicted Mr. Bradford.

At the sentencing hearing, the Court sentenced Petitioner under the mandatory guideline scheme that was the standard at the time. In the interim, the landscape of the judicial system has changed to the point where continuing to enforce the current judgment will only cause undue prejudice upon Petitioner. The recalling of the mandate and reconsideration of the sentence to be imposed will allow the Court to sentence Petitioner under the new constitutional standard established by the Supreme Court in *United States v. Booker*, 125 S.Ct. 738 (2005).

A. **THE SUPREME COURT'S DECISION IN *UNITED STATES V. BOOKER*, 125 S.Ct. 738 (2005) AND ITS LIST OF PROGENCY CASES, ALLOWS THIS HONORABLE COURT TO ALTER ITS ORIGINAL MANDATE PURSUANT TO RULE 60(b) OF THE FED.R.CIV.P. IN ORDER TO ALLOW THE COURT TO RECONSIDER THE ORIGINAL SENTENCE IMPOSED IN A NON MANDATORY GUIDELINE SCHEME**

The Supreme Court's decision in *United States v. Booker,* 125 S.Ct. 738 (2001) has arguably made its rules of retroactivity known through its guideline clarifying amendments.[1]  It is well established that guideline clarifying amendments are retroactive per se. *See United States v. Garcia-Cruz,* 40 F.3d 986, 990 (9th Cir. 1994) ("Under the law of our circuit, amendments to the sentencing guidelines which are 'clarifying' as opposed to 'substantive' may be given retroactive effect"); *see also United States v. Stinson,* 30 F.3d 121, 122 (11th Cir. 1994) (*per curiam*) (collecting cases). Since the Supreme Court's decision in *Booker* made no substantive changes to the guidelines and merely interpreted them, (Breyer, J. Slip. Op., pg. 25) ("Our remedial interpretations of the sentencing guidelines act" [makes the guidelines] advisory as "'Congress would have intended'" (*Id. Booker,* pg. 2) had it known its mandatory provision violated the Sixth Amendment right to a jury trial.) *See also Id., Booker,* pg. 22 ("Hence we have examined the statute in depth to determine Congress's likely intent in light of today's holding.) (emphasis in original).

---

[1] Petitioner understands that current Fifth Circuit precedent does not permit the application of the Booker opinion to post-conviction pleadings. However, it is inevitable that the Supreme Court will clarify and address the matter eventually. It is Petitioner's position that preservation of the issue is required for future appellate consideration.

6

In retrospect, the Supreme Court in *Booker* merely clarified congressional intent as to the federal sentencing guidelines since their implementation. Had *Booker* "super imposed its Sixth Amendment constitutional requirement announced therein by engrafting the Court's constitutional requirement on to the sentencing statute, it would have substantially destroyed the system." *Id.* Such substantive change would have produced unintended identical punishment for different degrees of similar crimes and visa versa thus destroying Congress's goal of sentencing uniformity. Because the *Booker* sentencing reform act amendments did not change the guidelines substantially but merely interpreted them as advisory instead of mandatory, such amendment is only a clarifying amendment which necessarily must be applied retroactively. *Id. Garcia-Cruz*, 40 F.3d at 990; *Stinson*, 30 F3d at 122.

When this Court entered the original judgment in Petitioner's case of 87 months incarceration, the Court sentenced Petitioner under a then mandatory guideline range without consideration of any additional options. Furthermore, at the time that the probation officer determined the Pre Sentence Investigation Report, it was relying on the relevant conduct provisions of the United States Sentencing Guidelines that were then mandatory in nature.

Since the United States Sentencing Guidelines have been declared advisory and non-mandatory as per the Supreme Court's decision in *Booker*, this Court will now

have the opportunity to calculate Petitioner's sentence based on the new advisory scheme of the guidelines. The Court will not be under the mandatory scheme of the guidelines. The Court will be in a position to impose a sentence in accordance with the discretion allowed by the Guidelines. This new guideline range will allow the Court to properly provide a sentence that is appropriate in light of Petitioner's involvement in the instant offense.

The *Booker* decision by severing and excising parts of the Federal Sentencing Act of 1994 is akin to legislating (*see e.g. Freeborn v. Smith*, 69 US 160, 168, 17 L.Ed.2d 922 (1865)), by the Supreme Court in essence modifying the federal sentencing guidelines *nunc pro tunc* to their November 1, 1987 effective date:

> "We answer the question of remedy by finding the provision of the federal sentencing statute that makes the guidelines mandatory, 18 U.S.C. § 3553(b)(1) incompatible with today's constitutional holding. We conclude that this provision must be severed and excised as must one other statutory section § 3742(e) which depends on the guideline's mandatory nature. *So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1994, as amended, 18 U.S.C. § 3551, 28 U.S.C. § 991, makes the guidelines effectively advisory.*"

*Id. Booker*, Breyer, J. Slip Op., pg. 2

Congress's power to make or amend the remedial statutes retroactively absent *ex post facto* concerns is unquestionable. *See Freeborn v. Smith*, 69 US at 168, 17 L.Ed.2d at 923 ("We do not question the validity of retrospect statutes that are purely remedial"); *see also Frisbee v. Whitney*, 76 US 187, 19 L.Ed.2d 668 (1869). Retroactivity thereby is merely a matter of intent. *See Rivers v. Roadway Express,*

511 US 298, 311, 128 L.Ed.2d 274, 278 (1994) ("The question is whether Congress has manifested such an intent.")

As a result of *Booker* it is the Supreme Court which remedially modified the Sentencing Reform Act of 1984 as "Congress would have intended," had it known in 1984 its mandatory sentencing guidelines violated the Sixth Amendment ("We have examined the statute in depth to determine *Congress's likely intent* in light of today's holding"), *id*. *Booker*'s indisputable intent to modify the guidelines *nunc pro tunc* is dispositive.

Finally even if the Supreme Court did not assume Congress's role in modifying the Sentencing Reform Act, in construing and interpreting it as "Congress would have intended" (Breyer, J. Slip Op., pg. 25) had it known its mandatory sentencing guidelines violated the Sixth Amendment (*Id., Booker,* at pg. 22) the Supreme Court has necessarily made *Booker* retroactively. Like *Booker* the Supreme Court in *Patterson v. McLean Credit Union*, 491 US 164 (1989) interpreted a 123 year old statute differently since appellant courts have done so since its enactment. As to *Patterson*'s retroactivity the Court said:

> "A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case given rise to that construction."

Thus *Patterson* provides the authoritative interpretation of the phrase 'make and enforce contracts' in the Civil Rights Act of 1866 before the congressional

9

1991 amendment overruling *Patterson* went into effect on November 21, 1991. *Patterson*'s interpretation provides the baseline for the Court's conclusion that the 1991 amendment would be retroactive if applied to cases arisen before that date.

The Supreme Court's judicial construction or interpretation of the Sentencing Reform Act of 1994 is inescapable from the retroactivity clause since "the Court has no authority to depart from congressional command setting the November 1, 1987 effective date of law it has enacted." (*Id. Rivers*, 511 US at 313, fn. 12, 128 L.Ed.2d 289, fn. 12)

In sum, since the District Court was under the impression at that time that it issued the instant judgment that Petitioner must be sentenced to a mandatory guideline range a proper reconsideration of the judgment is appropriate. This Court should consider its original sentence in light of the Supreme Court's decision in *Booker* where the Supreme Court determined that the guidelines were unconstitutional in the manner in which they were being imposed. This will in essence allow the Court to develop a non-guideline range in accordance with the Supreme Court's recent decision in *Booker* therefore dramatically reducing Petitioner's instant sentence.

## CONCLUSION

WHEREFORE Petitioner respectfully prays this Honorable Court alter the original judgment in the instant case and provide an alternate guideline sentence where the Court can properly determine an appropriate sentence based on Petitioner's involvement in the instant charged offense.

Done this 29 day of March 2007

I hereby do certify that pursuant to Penalty of Perjury Title 28 U.S.C. § 1746 that on this 29 day of March 2007 I signed and mailed this document via the Federal Bureau of Prisons' Legal Mail System.

Respectfully submitted,

Kennon Bradford, *Pro Se*
Reg. No. 26436-034
USP Springfield
P.O. Box 4000
Springfield, MO 65801

## CERTIFICATE OF SERVICE

I hereby do certify that a true and correct copy of this Motion to Alter and/or Amend Judgment as a result of the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005) was mailed to: U.S. Attorney's Office, A.U.S.A. John Murphy, 501 Magazine Street, 2nd Floor, New Orleans, LA 70130, by placing same in the Federal Prison's Legal Mailbox with sufficient first class postage.

Done this 29 day of March 2007

>I hereby do certify that pursuant to Penalty of Perjury Title 28 U.S.C. § 1746 that on this 29 day of March 2007 I signed and mailed this document via the Federal Bureau of Prisons' Legal Mail System.
>
>Respectfully submitted,
>
>*/s/ Kennon Bradford*
>Kennon Bradford
>Reg. 26436-034
>USP Springfield
>P.O. Box 4000
>Springfield, MO 65801

Med ctr

Springfield

United States District
Clerk of Court Office
500 Poydras St
New Orleans, L

Legal Mail